## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| HASAN BAYADI, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:15cv00618 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HAROLD CLARKE, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

Hasan Bayadi, a Virginia inmate proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that the Virginia Department of Corrections' ("VDOC") grooming policy violates his federal and state rights. Defendants filed a motion for summary judgment, and Bayadi responded, making this matter ripe for disposition. Having considered the record, I conclude that defendants' motion for summary judgment must be granted in part and denied in part.

## I.

Bayadi is a Muslim inmate housed at Wallens Ridge State Prison ("Wallens Ridge"). Bayadi filed this action challenging VDOC Operating Procedure ("OP") 864.1, the grooming policy, on the basis that it violates the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the United States and Virginia Constitutions, and Virginia law, by placing a substantial burden on his religious practice because Bayadi cannot wear his beard uncut, as is required by his religion, without having to spend a year in punitive segregation for violating OP 864.1.

On October 4, 2015, Bayadi filed an informal complaint, stating that OP 864.1 "is nothing but a way for [VDOC officials] to religiously harass Muslims, such as [himself], in violation of the RLUIPA and [the First and Fourteenth] Amend[ments]," and Virginia law.

Bayadi argued that the policy "forc[es]" him to "spend 6 months to a year in segregation if [he] wishes to practice Islam in compliance with Islamic law." In support of his argument that OP 864.1, Bayadi cited to the "C-5 864.1 Violators Pod," a pod at Wallens Ridge where inmates are allowed to grow out their hair, and argued that the existence of this pod "proves" that long-haired inmates are not hygiene, security, or identification threats. On October 7, 2015, in response to his informal complaint, Unit Manager Collins stated that Bayadi's "current status is being reviewed by the Restricted Housing committee" and if the committee agrees, Bayadi "will be provided the opportunity to go to the C-5 pod which houses 864 violators."

On October 7, 2015, Bayadi filed a regular grievance, stating that Unit Manager Collins did not understand the issue Bayadi raised in his informal complaint. Bayadi explained that he did not want to go to the 864.1 Violators Pod, but rather he referenced that pod as "proof" that there are no legitimate reasons for the existence of OP 864.1. Bayadi re-alleged that OP 864.1 is used to "harass Muslims, such as [himself]" and violates the RLUIPA, the United States and Virginia Constitutions, and Virginia law. Bayadi stated that he wants OP 864.1 "eliminated" so that he can grow his beard as a Muslim without having to go to segregation for six months to a year for violating OP 864.1. On October 8, 2015, B.J. Ravizee rejected Bayadi's regular grievance for "Insufficient Information," stating that he needed to provide the "I[nstitutional] C[lassification] A[uthority ("ICA")] Form to appeal [his] housing assignment."

On October 11, 2015, Bayadi appealed the regular grievance, specifically alleging that OP 864.1 is "unconstitutional and a direct violation of" the RLUIPA because it places a "substantial burden" on Muslims, such as himself, because Islam forbids Muslims to cut their hair. Bayadi argued that although the policy cites hygiene, security, and identification of inmates as reasons for its existence, the "very fact" that the 864.1 Violators Pod exists "proves" that the

2

policy is a "sham" that is being used to "religiously harass" Muslims. On October 23, 2016, the Regional Ombudsman upheld the intake decision. No further administrative review is available.

In their motion for summary judgment, defendants argue that Bayadi failed to exhaust his administrative remedies prior to filing this action. Defendants state that although Bayadi filed a regular grievance pertaining to the subject matter of his § 1983 complaint, the regular grievance was rejected at the intake level on the basis that it contained insufficient information and Bayadi failed to resubmit the grievance with the required information as instructed in the response. Defendants argue that because Bayadi did not comply with the grievance coordinator's instructions to remedy the deficiency, he did not properly exhaust his administrative remedies within the meaning of the Prison Litigation Reform Act ("PLRA").

In response to the motion for summary judgment, Bayadi argues that he did exhaust his remedies in compliance with the PLRA. Bayadi states that the ICA hearing form that he was instructed to provide "has nothing to do with this case." Bayadi points out that he is clearly challenging the VDOC policy and not his housing assignment. Bayadi further states that he could not submit the ICA hearing form because it does not exist. Bayaydi alleges that he has not been out of compliance with the grooming policy since being at Wallens Ridge, he has never been charged with violating the policy, and he has not had an ICA hearing; therefore, he does not have an ICA hearing form to submit.

## II.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of

3

material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. *Id.* at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *see Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) ("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."). However, summary judgment is not appropriate where the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Ky. Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991). A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).

### III.

VDOC OP § 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints and requires that, before submitting a formal grievance, the inmate must demonstrate that he has made a good faith effort to resolve the grievance informally through the procedures available at the institution to secure institutional services or resolve complaints.

4

If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the standard "Regular Grievance" form. Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. A grievance meeting the criteria for acceptance is logged in on the day it is received.[1] If the grievance does not meet the criteria for acceptance, prison officials complete the "Intake" section of the grievance and return the grievance to the inmate. If the inmate desires a review of the intake decision, he must send the grievance form to the Regional Ombudsman.

## IV.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. at 215-216; *Anderson v. XYZ Corr. Health Services, Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F.Supp.2d 544, 548 (E.D. Va. 1999) ("[T]he PLRA amendment made clear that exhaustion is now mandatory."). But, I am "obligated to ensure that any defects in

---

[1] Up to three levels of review for a regular grievance exist. The Facility Unit Head of the facility in which the offender is confined is responsible for Level I review. If the offender is dissatisfied with the determination at Level I, he may appeal the decision to Level II, a review which is conducted by the Regional Administrator, the Health Services Director, or the Chief of Operations for Offender Management Services. The Level II response informs the offender whether he or she may pursue an appeal to Level III.

administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d at 725.

In this case, Bayadi's regular grievance was rejected at intake because he did not include an ICA hearing form and he was prohibited from pursuing his claim through the grievance procedure without providing the form. Bayadi alleges that the form does not exist.[2] Accordingly, I conclude that there is a material dispute as to whether administrative remedies were available to Bayadi. Because defendants have not demonstrated the absence of a material dispute of fact regarding Bayadi's exhaustion of available administrative remedies, I will deny defendants' motion for summary judgment on this ground, but without prejudice to further proceedings on this defense.

## V.

To the extent Bayadi brings this action against the defendants in their official capacity for monetary damages, his claim is not cognizable in § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Therefore, I will grant defendants' motion for summary judgment as to Bayadi's claim for monetary damages against defendants in their official capacity.

ENTER: This <u>24th</u> day of August, 2016.

*Norman K Moon*

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[2] Moreover, it is unclear how the form was relevant to the issue raised in Bayadi's grievance.

6